# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CR 117-34** |
| | * | |
| **v.** | * | |
| | * | |
| **REALITY LEIGH WINNER,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S REPLY TO DEFENDANT'S MOTION AND BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION
### FOR A PROTECTIVE ORDER

The Government opposes the defense's proposed changes to the Government's proposed Protective Order under Section 3 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III. As a threshold matter, the Defendant's response fundamentally confuses the purpose of this proceeding—namely, to issue an appropriate Protective Order under Section 3 of CIPA to ensure that classified information the Government provides to the defense is not disclosed without authorization—with an opportunity to litigate elements of the crime with which the Defendant is charged, Title 18, United States Code, Section 793(e). While the defense's arguments with respect to the charge are meritless, the Government respectfully reserves response to the defense contentions on that point, and limits the scope of this filing to the proposed CIPA Section 3 Protective Order.[1]

---

[1] A protective order under CIPA to prevent the unauthorized use, disclosure, or

The defense's claims should not distract the Court from the simple and important purpose of Section 3 of CIPA: to issue a Protective Order protecting classified information from unauthorized disclosure, which is essential to the ability of the Government to carry its evidentiary burdens and satisfy its obligations to the defense in the course of a criminal prosecution. *See United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983).

I. **Procedural History**

The Government provided a proposed Protective Order to the defense on June 19, 2017, asked whether counsel would consent to the entry of the Order, and offered to discuss any questions or concerns the defense had. On June 23, after the Government requested a response, counsel for the defense indicated that the defense would respond the following week. At a June 27 planning conference before this Court, the defense for the first time raised an objection concerning its obligations to protect classified information that had appeared in the news media. Counsel also requested that the Defendant receive the same access as defense counsel to classified information provided in discovery. Because the parties were not able at the conference to agree upon

---

dissemination, of *classified information* has an entirely different function than 18 U.S.C. § 793(e), a statute imposing criminal liability for the unauthorized disclosure of *information relating to the national defense* ("national defense information" or "NDI"). To be sure, the concepts of classified information and NDI are closely related and substantially overlap. *United States v. Rosen*, 445 F. Supp. 2d 602, 618-21 (E.D. Va. 2006) (analyzing cases). The only issue before this Court is the Protective Order, and that Order will apply to classified information. Accordingly, the defense's arguments concerning criminal liability for the unauthorized disclosure of NDI are not relevant to the Court's consideration of how to phrase an Order protecting classified information from unauthorized disclosure.

modifications to the proposed Protective Order, the Court directed the parties to attempt

to reach agreement within two weeks, and ordered that the "parties have 14 days to file

supplemental briefs regarding language for the Protective Order." *See* Minute Order,

Doc. 32 (June 27, 2017).

On June 29, 2017, the Government proposed a solution to the defense. Over the

following week, the defense declined to discuss the Government's proposal. The

Government ultimately conferred with defense counsel on July 7. Defense counsel

reiterated its objection to the proposed order, and requested authorities supporting the

Government's position.

On the same day, the Government provided to the defense a protective order from

an Espionage Act prosecution in another District,[2] and on July 8, the Government

provided citations to CIPA, the Executive Order defining classified information, and

three judicial opinions supporting the Government's position. That evening, counsel

repeated (without citation) its prior objection, and introduced the new issue of disclosure

of experts' identities to the Government as part of the security clearance process.

On July 9, the Government suggested that if various hypothetical situations that

appeared to concern the defense actually occurred, the Classified Information Security

Officer (CISO) could assist. The Government also informed the defense that, given

when the issue was raised, it did not anticipate being able to resolve the issue regarding

experts prior to the July 11 filing deadline. Receiving no response from the defense, on

---

[2] *United States v. Sterling*, Doc. 38, 1:10-cr-485 (E.D. Va. Feb. 11, 2011) (hereinafter "*Sterling* Protective Order").

July 11, the Government filed its Motion for Protective Order Pursuant to Section 3 of the

Classified Information Procedures Act ("Government's Motion" or "Gov. Mot.").

On July 14, the defense filed a "Notice of Intent to File."    In response, the Court

ordered the defense to respond by July 20, with the Government's reply due July 24.

The defense filed its response on July 20 ("Defense Response" or "Def. Resp.").

## II.    Protective Order Provisions

Despite the defense's claims that the proposed Protective Order would interfere

with the presentation of a defense, a protective order issued under Section 3 of CIPA does

no such thing.    Rather, the proposed Protective Order is intended to ensure that the

Government's prosecution of a defendant can proceed in a manner that protects that

defendant's constitutional rights without jeopardizing classified information.

For context, the scope of a CIPA Section 3 Protective Order includes

"information conveyed by the Government to the defendant in the course of pretrial

discovery or the presentation of the Government's case," the disclosure of which a court

may prohibit both within the litigation itself and outside the courtroom.    In addition, a

CIPA Section 3 protective order may prohibit disclosure "in connection with the trial" of

classified information acquired by the defense *outside* the criminal prosecution.[3]    *United*

*States v. Pappas*, 94 F.3d 795, 801 (2d Cir. 1996) (citing Sections 3 and 5 of CIPA).

Accordingly, the Court should bear that scope in mind when considering the parties'

disagreements, and the parties should remain aware of legal obligations aside from the

---

[3] Of course, any disclosure of classified information outside the litigation of a case
remains subject to other legal requirements.    *United States v. Pappas*, 94 F.3d 795, 801
(2d Cir. 1996).

Protective Order.

The defense raises three categories of issues with respect to the Government's proposed Protective Order. First, the defense seeks permission to publicly disclose or confirm classified information that has appeared in the public domain due to unauthorized disclosures. Second, the defense seeks access for the Defendant to all classified discovery provided by the Government. Third, the defense seeks to avoid disclosure to the Government of the identities of experts to whom it seeks to provide access to classified information. These subjects, including defense counsel's proposed deletions, additions, or other alterations to the Protective Order, are addressed below in turn. The Court should reject each of the defense's proposals.

### A. The Government's Proposed Protective Order Accurately Defines Classified Information and Protects Such Information Appropriately

In response to concerns raised by the defense, the Government's proposed Protective Order contains specific language clarifying that, if an individual subject to the order had never been officially informed (through classified discovery or otherwise being informed by the Government in this case) that information is classified, he or she would not violate the Protective Order by further disclosing it. The defense appears to view this as some type of trap, and has offered a variety of scenarios under which the proposed Protective Order could be violated by an unknowing disclosure of classified information that has appeared in the news media. The defense's concerns are unfounded, and its proposals run contrary to the law.

First, the defense asks for a number of additions and deletions to the protective order, all of which rely on the incorrect assumption that classified information that

appears in the public domain due to unauthorized disclosure becomes unclassified:

- Proposed addition to Paragraph 4.B:  "Information drawn from unclassified sources does not become classified information because similar information also happens to appear in classified documents."

- Proposed addition to Paragraph 16:  "Copies of newspaper articles and other publicly published documents need not be filed under seal."

- Proposed modifications to Paragraphs 19.H and 22 (*see* Def. Resp. at 2-3).

These proposals misstate the law.   As described in the Government's Motion and further set forth below, classified information that has been released into the "public domain," or appears in the news media as a result of an unauthorized disclosure, remains classified.   *See* Gov. Mot. at 4.   This principle is well established.   *See Shaffer v. Defense Intelligence Agency*, 102 F. Supp.3d 1, 9 & n.7; *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("[T]he fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods, and operations.").   Classified information is not in the "public domain" for the purposes the defense suggests unless the United States Government has officially disclosed it.   *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975); *Edmonds v. U.S. Department of Justice*, 405 F. Supp. 2d 23, 30 (D.D.C. 2005); *see also American Library Ass'n v. Faurer*, 631 F. Supp. 416, 421 (D.D.C. 1986) (accepting classification of information that had been classified, then declassified, then re-classified, and which had been publicly disclosed without authorization).   As further described in the Government's Motion, whether such information remains classified is solely within the Executive Branch's purview.   *See* Gov. Mot. at 3-4; *see also Collins*, 720 F.2d at 1198 n.2 ("It is an Executive function to classify information, not a judicial one.").

Under the defense's proposals, an individual with a security clearance and subject to this Protective Order could have actual knowledge that information is classified, and re-disclose without authorization that classified information (thereby confirming it), so long as someone else has already violated the law and an oath by disclosing it without authorization. That proposition directly conflicts with the law, and this Court should not incorporate it into the Protective Order.[4] *See U.S. ex rel. Mateski v. Mateski*, 634 Fed. Appx. 192, 194 (9th Cir. 2015) (explaining that the Government's classification decisions are entitled to deference notwithstanding claim that information is in public domain).

Turning to the specific language of the defense's proposed modifications, with respect to the defense's proposed addition to Paragraph 4.B, the phrase "become classified information" does not make sense, because the Executive determines whether to classify or declassify information. Further, "drawn from unclassified sources" is vague because it is not clear what the defense means by "unclassified sources." This phrase could readily be interpreted to mean "read in the newspaper," in which case the defense's proposed statement is flatly incorrect. As the Government has explained, it is possible for an "unclassified source" such as a newspaper to publish classified information that the newspaper received as a result of unauthorized disclosure.

The defense's proposed addition to Paragraph 16, "Copies of newspaper articles and other publicly published documents need not be filed under seal," also should be

---

[4] The significant misstatement of the law in the defense's proposed changes is not merely an issue of wording or preference. Rather, the defense proposes that, in addition to good-faith ignorance or error, the presence of classified information in the "public domain" would render appropriate the filing of that classified information without use of the CIPA process. *See* Defense Motion at 2 (using the disjunctive "or").

rejected. Documents containing classified information must be filed under seal through the CISO. If a publicly available document contains classified information that remains classified because it was disclosed without authorization, that does not absolve the defense of its obligation to file under seal the document that contains classified information.

Whether a particular article contains classified information that the defense is obligated to protect can be a fact-specific question. Accordingly, rather than adopt a blanket rule that would permit the defense to file on the open record a document containing classified information, this issue is best handled on a case-by-case basis through the CISO. *See United States v. Moussaoui*, 65 F. App'x. 881, 887 n.5 (4th Cir.2003) (rejecting argument that sealing is not required because "much of the [classified] information contained in the pleadings has been reported publicly" when no official disclosure of that information had occurred).

Finally, the defense seeks deletion of part of the paragraph 19.H of the Government's proposed Protective Order, and proposes instead the insertion at paragraph 22 of a provision immunizing unauthorized disclosure of classified information so long as that information is "in the public domain."

These proposed changes are likewise inappropriate. The Government's proposed Protective Order correctly describes the defense's responsibilities, consistent with the Second Circuit's opinion in *United States v. Pappas* cited above. If counsel receives classified information from the Government, and that classified information appears in an "unclassified source" as a result of an unauthorized disclosure, counsel must protect the

classified information.   If classified information appears in an "unclassified source" and the defense has not received that classified information from the Government, then such information would be beyond the scope of the Protective Order the Government has proposed.   The process set forth by the Government does not improperly interfere with the presentation of the defense.   CIPA is intended to ensure that the Government's prosecution of a defendant can proceed in a manner that protects a defendant's constitutional rights without further jeopardizing classified information.   Accordingly, like the defendants in numerous previous prosecutions under the Espionage Act, the defendant in this case will be able to present information to the Court, but she must do so consistent with the requirements of CIPA.

Finally, the hypothetical scenarios posited by the defense do not provide any reason to deviate from the Government's proposed Protective Order.   The suggestion implicit in the Defense Response—that the Court would arbitrarily punish the defense for an unknowing, inadvertent violation of the Court's Order—is absurd.   Of fundamental importance, however, is a concept of which the defense filing reflects an insufficient understanding:   individuals with a security clearance swear an oath to protect classified information.   *See, e.g.,* Def. Resp. at 8 ("Why should Defense Counsel be placed into the role of making security assessments of information in the public domain?").   Possession of a security clearance imposes restrictions on what an individual can disclose, including repetition or confirmation of classified information known to that individual that, due to unauthorized disclosure, has appeared in the public domain.   If classified information has been published in the newspaper, and someone with a security clearance

acknowledges it to be true or to be genuine government information, that validation reveals more than the unauthorized publication itself. *See, e.g., Fitzgibbon*, 911 F.2d at 765, 767 ("'[I]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.' . . . [W]e have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." (quoting *Alfred A. Knopf, Inc.*, 509 F.2d at 1370)); *see also Wilson v. CIA*, 586 F.3d 171, 192 n.23 (2d Cir. 2009) (noting Central Intelligence Agency assessment that when "otherwise classified information is also available *independently* in open sources . . . the Agency retains the right to disallow certain open-source information or citations" where context such as the author's Agency affiliation "might confirm the classified content").

The application of a CIPA Section 3 Protective Order to classified information that had been disclosed without authorization and published was litigated extensively in *United States v. Sterling*, and the court's order, consistent with many other orders from district courts around the nation, stated the following regarding such classified information:

> Information in the public domain is ordinarily not classified. However, if classified information is reported in the press or other form of media or otherwise enters the public domain, the information does not lose its classified status merely because it is in the public domain. And information reported in the press or other form of media or otherwise in the public domain may be considered classified and subject to the provisions of CIPA if the information in fact remains classified and is confirmed by any person who has, or had, such access to classified

> information and that confirmation corroborates the information in
> question.

*Sterling* Protective Order, para 3.; *see also Sterling*, Doc. 222, Transcript of Feb. 10,

2011 Motions Hearing, at 18-19 (hereinafter "*Sterling* Protective Order Transcript")

(noting that the trial court was comfortable that defense counsel was "fully sensitive to

the line that can't be crossed").[5]   This provision is substantially the same as the

Government's proposed Protective Order in this case, *see* Proposed Protective Order,

Doc. 42-1, para 19.G, although the proposed Protective Order in this case further clarifies

that while the defense is "precluded from making private or public statements where the

statements would reveal personal knowledge from non-public sources regarding the

classified status of the information, or would disclose that the Defense had personal

access to classified information confirming, contradicting, or otherwise relating to the

information already in the public domain," the defense is "*not* precluded from citing or

repeating information in the public domain that counsel does not know or have reason to

believe to be classified information, or derived from classified information."   *Id.* Para.

19.H (emphasis added).

---

[5] Examples of other Protective Orders with similar provisions include:   *United States v. Kiriakou*, No. 1:12-cr-127, Doc. 18, para. 3 (E.D. Va. March 8, 2012) (hereinafter "*Kiriakou* Protective Order"); *United States v. Kim*, No. 1:10-cr-225, Doc. 10, para. 7 (D.D.C. Oct. 13, 2010) (hereinafter "*Kim* Protective Order"); *United States v. Ghailani*, No. 1:98-cr-1023, Doc. 765, para. 5(c), (d) (S.D.N.Y. July 21, 2009) (hereinafter "*Ghailani* Protective Order"); *United States v. Fondren*, No. 1:09-cr-263, Doc. 15, para. 3 (E.D. Va. June 16, 2009) (hereinafter "*Fondren* Protective Order"); *United States v. Hashmi*, No. 1:06-cr-442, Doc. 38, para. 6 (S.D.N.Y. Feb. 7, 2008) (hereinafter "*Hashmi* Protective Order"); *United States v. Amawi*, No. 3:06-cr-719, Doc. 116, para. 7 (N.D. Ohio July 7, 2006) (hereinafter "*Amawi* Protective Order"); *United States v. Nicholson*, No. 09-cr-40, Doc. 41, para. 7 (D. Or. May 9, 2006) (hereinafter "*Nicholson* Protective Order").

To be sure, if a party subject to the Protective Order and who holds a security clearance does not know that a publication includes classified information, and has not received or been informed of the classified information the article contains, then he or she would not violate the Order by repeating the information contained in the publication. This distinction is reflected in the Government's proposed standard: that no violation of the Order would occur if an individual subject to the Order disclosed information that the individual did not know, and reasonably should not have known *based on information provided by the government in this case*, is classified. Notably, in characterizing the proposed standard as "scary," *see* Defense Response at 7, the defense omits the limiting provision italicized above.

The defense tries and fails to make this straightforward provision appear complicated. To begin, the defense's reference to *United States v. Gorin*, 312 U.S. 19, 28 (1941) is misplaced. The complete passage from which the defense selectively quoted correctly states that "[w]here there is no occasion for secrecy, as with reports relating to national defense, published by the authority of Congress or the military departments, there can, of course, in all likelihood be no reasonable intent to give advantage to a foreign government."[6]  *Id.*

---

[6] In contrast, there have been no authorized disclosures of the classified information that the Government anticipates providing in classified discovery in this case.

The defendant also cites *United States v. Heine*, 151 F.2d 813 (2d Cir. 1945). Although that case involved NDI, it predated the first Executive Order establishing the classification system, and is not relevant to the discussion of whether information is classified. *See id.* at 815-16.

Further, if the defense reads a news article that merely states that it is citing classified information, *see* Defense Response at 8, and the defense has not received any classified information that would confirm or validate that the article actually contains classified information, then the Proposed Order would not apply to such members' repetition or further disclosure of the news article.   Their public use of that article would not confirm or validate it.   In no way could the Court find, even if it were so inclined, that the defense "knew, or reasonably should have known based on information provided by the government in this case," that the information was classified.[7]   Finally, as the Government has stated repeatedly, if a defense member were at all uncertain as to his or her obligations,[8] the CISO would be available to assist.[9]

---

[7] To be clear, however, if the defense receives additional classified information, such as classified information provided by the Defendant, the defense is obligated to protect that information and must not disclose it publicly or on the open record.

[8] In stating its concerns regarding potential confusion of obligations, the defense appears to misunderstand the quantity of classified information it will receive, as well as the type. *See* Defense Motion at 7 (describing a hypothetical situation where classified information is buried in a paragraph on page 2037 of a potential discovery production).   The Government respectfully suggests that when the defense receives the limited classified discovery in this case, the defense's concerns about losing track of classified information will subside.

[9] There is no automatic sanction for a violation of the Protective Order.   If a violation occurs, the Court can assess what sanction, if any, would be appropriate.   In addition, every security clearance can be suspended, modified, or revoked by appropriate authorities—independent of the Court and the prosecution team—if the holder is unwilling or unable to appropriately safeguard classified information.

**B. Due Process Does Not Require Providing the Defendant, Charged with Retaining and Transmitting National Defense Information Without Authorization, Full Access to Classified Discovery**

The defense next proposes the addition of a paragraph 13, which would give the Defendant equal access to any classified discovery provided to defense counsel.   The Court should reject this proposal.

The Defendant will be given access to the classified information to which she is entitled under Section 10 of CIPA,[10] and, if identified, any other classified information required by due process or the Federal Rules of Criminal Procedure.   The Defendant— who is charged with the unauthorized retention and transmittal of NDI—should not, however, as a default be provided further access to classified information.   The scope of classified discovery in this case has not yet been determined.   It may include, for example, classified information to which the Defendant has not previously had access.   Given the charge against the Defendant, disclosing that information to her could further jeopardize national security.   If defense counsel believe that they must disclose specific information provided in discovery to the Defendant, that should be the subject of a subsequent motion.

It is well established that "CIPA authorizes district courts to limit access to classified information to persons with a security clearance as long as the application of

---

[10] Section 10 of CIPA provides that in a prosecution for a crime in which the Government must prove that material "relates to the national defense . . . the United States shall notify the defendant, within the time before trial specified by the court, of the portions of the material that it reasonably expects to rely upon to establish the national defense . . . element of the offense."

this requirement does not deprive the defense of evidence that would be useful to counter the government's case or to bolster a defense." *United States v. Moussaoui*, 591 F.3d 263, 289-90 (4th Cir. 2010); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 122 (2d Cir. 2008) (citations and internal quotation marks omitted). In deciding whether to restrict a criminal defendant's access to discovery that the Government has provided to defense counsel, a court "must determine whether the criminal defendant's interest in the information at issue outweighs the government's interest in withholding it." *In re Terrorist Bombings*, 552 F.3d at 124, 125-26.

Contrary to the defense's assertion that this doctrine does not apply to the Defendant because she is a U.S. citizen and is not accused of crimes relating to terrorism, *see* Defense Response at 13, the need to protect classified information from unauthorized disclosure is just as important when, as here, the Defendant is charged with unauthorized disclosure. *See United States v. Truong Dinh Hung*, 667 F.2d 1105, 1108 (4th Cir. 1981) (finding no prejudice to espionage defendants who did not receive access to *Jencks* Act material during post-conviction motion to vacate). Numerous protective orders issued under Section 3 of CIPA, including in unauthorized disclosure cases, have contained provisions similar to that proposed by the Government in this case. *See, e.g.*, *Kim* Protective Order para. 12; *Ghailani* Protective Order para. 5(a) (prohibiting defense counsel from disclosing to defendant any classified information except classified information defendant provided to counsel); *Hashmi* Protective Order para. 11(a) (requiring defendant to either obtain a security clearance or Government approval to access classified information); *Amawi* Protective Order paras. 12, 13; *Nicholson*

Protective Order paras. 10(d), 17(b); *but see, e.g., Kiriakou* Protective Order para. 7; *Fondren* Protective Order para. 7.[11]

In this case, the Defendant is charged with abusing her access to classified information and transmitting it to an unauthorized recipient.[12]   It is therefore entirely appropriate to deny her access to additional classified information.   Moreover, there is no promise she could make to protect classified information that she has not already broken.

The defense relies on the example of the *Sterling* Protective Order, discussed above, in support of its request to give the Defendant unrestricted access to classified discovery.   *See* Def. Resp. at 11.   The *Sterling* case, however, is readily distinguishable. Most significantly, when the parties and the trial court discussed the *Sterling* Protective Order, questions regarding what classified information the Government would provide in discovery had already been resolved.   *See Sterling* Protective Order Transcript at 10. That permitted the Government to assess what classified discovery it would provide immediately to the Defendant, and what would require further discussion.[13]   *See id.* at 5-

---

[11]  This concept is not unique to cases involving national security.   *See, e.g., United States v. Herrero*, 893 F.2d 1512, 1526 (7th Cir. 1990) (abrogated on other grounds, *United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990)).

[12]  In addition, the Government directs the Court and defense counsel to the Government's July 7, 2017 filing under seal.

[13]  The defense also cites an unreported opinion in *United States v. Fishenko*, 2014 WL 5587191 (E.D.N.Y. 2014).   That opinion appears to address not whether the defendant could access particular classified information provided in discovery, but rather the logistics and security measures that would be used to physically facilitate the access that the defendant had already been granted.   *Id.* at *1, *3.   Notably, the CIPA Section 3 Protective Order in that case, which involved defendants who, *inter alia*, acted as

6; *Sterling* Protective Order para. 7.

### C. There Is No Reason To Deviate from Standard Procedure for Defense Experts Who Seek Access to Classified Information

Finally, the defense has proposed the addition of paragraph 15 related to potential experts ("The Classified Information Security Officer shall not disclose to counsel for the government the names of experts who, with appropriate security clearances, have inspected classified information at the request of defense counsel"), as well as a deletion from paragraph 19.F on this point. The Government respectfully requests that this Court reject these proposed modifications.

A security clearance is necessary, but not sufficient, for an individual to access classified information. The Government has a legitimate interest in knowing who is accessing classified information. The defense has not identified any prejudice that would result from disclosing experts' identities to the Government. Accordingly, the Government should receive advance notice of all personnel for whom the defense seeks access to classified discovery and an opportunity to submit objections to the Court if necessary.

Without citing authority, the defense proposes to permit defense experts to review material provided by the Government in classified discovery without notice to the Government. *See* Defense Motion at 2. The procedure in the Government's proposed

---

unregistered agents of a foreign government and violated export laws, was substantively the same as the Government's proposed Protective Order in this case with regard to the defendants' access to classified information and the Government's opportunity to object to proposed experts. *See United States v. Fishenko*, No. 1:12-cr-626, Doc. 132, paras. 5, 10, 11(f) (E.D.N.Y. July 1, 2013).

Protective Order is commonly included in Section 3 protective orders, and is a necessary consequence of the presence of classified information in a case. *See, e.g., Sterling* Protective Order para. 9; *Kiriakou* Protective Order para. 7; *Kim* Protective Order para. 7; *Ghailani* Protective Order para. 17(f); *Fondren* Protective Order para. 7; *Hashmi* Protective Order para. 15(f); *Amawi* Protective Order para. 13; *Nicholson* Protective Order para. 10(b); *but see, e.g.*, *United States v. Musa*, 833 F. Supp. 752, 756 (E.D. Mo. 1993). Indeed, Paragraph Five of the Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information provides:

> **Persons Acting for the Defendant.** The government may obtain information by any lawful means concerning the trustworthiness of persons associated with the defense *and may bring such information to the attention of the Court for the Court's consideration in framing a protective order pursuant to Section 3 of the Act.*

(emphasis added). The agency whose information the Defendant is charged with stealing and disclosing has a security-based need to know prior to additional individuals receiving access to its information, even if those individuals receive security clearances. The Government's proposed Protective Order will give the Government the opportunity, if necessary, to protect that agency's equities by objecting to the Court regarding a particular proposed recipient of classified information.

While the presence of classified information in a criminal case does not reduce the constitutional protections afforded to a defendant, that presence does require changes to some procedures. An analogous provision is Section 5 of CIPA, which requires the defense to provide notice to the Government of any intention to disclose or cause the

disclosure of classified information in any manner in connection with any trial or pretrial proceeding. While defendants in other cases have challenged this requirement on the basis that it compels them to reveal aspects of defense strategy earlier than in an ordinary case, courts have consistently found that the particular security considerations specific to classified information justify this modification to standard procedure. *See United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) ("We see no constitutional infirmity in the pretrial notification requirements of section 5."); *United States v. Hitselberger*, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) ("Given CIPA's careful balancing, it is unsurprising that every court to consider the issue [has found CIPA's discovery rule constitutional]."); *United States v. Hashmi*, 621 F. Supp. 2d 76, 80 (S.D.N.Y. 2008) ("Scores of courts have concluded the same."). Accordingly, the defense request to permit such access without providing the Government with notice and an opportunity to be heard should be denied.

## III. Conclusion

The defense's arguments regarding Title 18, United States Code, Section 793(e), the Espionage Act in general, and the definition of NDI are irrelevant and misplaced. The only question requiring this Court's resolution is how to protect from unauthorized disclosure classified information that the Government provides to the defense in discovery. The straightforward, proven means to do that is the Protective Order the Government has proposed, which accurately defines classified information and specifies that the defense will not violate the Order by unknowingly disclosing classified information that the Government has never provided to it. Moreover, the role of the Court ensures that no person subject to the Order will be found in violation of it without

cause.

The defense's remaining arguments are meritless. The Defendant must be
provided access to classified information as required by due process, but is not entitled to
access all classified information the Government provides in discovery. Finally, the
defense has not, and cannot, identify any meaningful prejudice that will result from the
Government receiving notice of potential experts' identities and an opportunity to
challenge their access to classified information.

WHEREFORE, the Government respectfully requests that the Court issue the
Protective Order as proposed in the Government's July 11, 2017 Motion for Protective
Order.

Respectfully submitted,

JAMES D. DURHAM
ACTING UNITED STATES
ATTORNEY

By: ***/s/ Jennifer G. Solari***
Jennifer G. Solari
Assistant United States Attorney
Southern District of Georgia

***/s/ Julie A. Edelstein***
Julie A. Edelstein
Trial Attorney
U.S. Department of Justice
National Security Division

***/s/ David C. Aaron***
David C. Aaron
Trial Attorney
U.S. Department of Justice
National Security Division

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that I have on this day served all the parties in this case in

accordance with the notice of electronic filing ("NEF") which was generated as a result

of electronic filing in this Court.

      This 24th day of July, 2017.

JAMES D. DURHAM
ACTING UNITED STATES
ATTORNEY

*/s/ Jennifer G. Solari*

Jennifer G. Solari
Assistant United States Attorney

Post Office Box 8970
Savannah, Georgia 31401
Telephone No: 912-652-4422