UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | NO. 1:17-CR-00034 |
| | * | |
| REALITY LEIGH WINNER | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO REOPEN DETENTION HEARING AND IMPOSE CONDITIONS OF RELEASE**

NOW INTO COURT, through undersigned counsel, comes Defendant Reality Leigh Winner ("Ms. Winner" or "the Defendant"), who respectfully files her Reply in support of her Motion to Reopen Detention Hearing Pursuant to 18 U.S.C. § 3142(f) and Impose Conditions of Release [Rec. Doc. No. 96] (the "Motion") and in response to the Government's Opposition to said Motion [Rec. Doc. No. 100]. For the reasons set forth in the Defendant's Motion, in the reply below, and before the Court on September 29, 2017, the Defendant requests that the Court find there is a combination of conditions that will reasonably assure Ms. Winner's appearance as required and the safety of any other person and the community, and release Ms. Winner with conditions.

**I.      The Nature and Circumstances of the Offense Charged and the Weight of the Evidence Against Ms. Winner are Not the Determinative Factors.**

The Government has asserted that the nature and circumstances of the offense here are serious. Yet, Congress has determined that the offense of willful retention and transmission of national defense information is *not* one of the offenses for which there is a rebuttable presumption that there are no conditions that will reasonably assure the safety of the community.

*See* 18 U.S.C. § 3142(e). Thus, here, detention is not to be presumed no matter how serious the allegations are regarding the nature and circumstances of the offense.

The Defendant has raised serious questions regarding the strength of the Government's case. Ms. Winner has filed a motion to suppress the statements she made to law enforcement on June 3, 2017, and any evidence derived from that encounter [*See* Rec. Doc. No. 63]. She has also countered much of the allegedly corroborating evidence of guilt. For example, at the hearing on September 29, 2017, the Government's own witness conceded that use of the various items it claimed was troubling -- a Tor browser, a "slippery.email" account, among others -- is neither criminal nor suspicious, despite the Government's innuendo. Perhaps more compelling, at the September 29, 2017 hearing, the Defendant demonstrated that the evidence seized by the Government that it loudly touted at the original detention hearing -- computers, electronic media, cell phones, and the like -- did not reveal any further criminal wrongdoing. Indeed, the Government has now conceded that its review of system logs "has not revealed conclusively whether the Defendant was able to move any data to the USB drive" [Rec. Doc. No. 100 p. 4 n.2]. In short, despite months of review and massive speculation about additional wrongdoing in the original detention hearing, the Government has brought no further charges against the Defendant -- a significant point that counsels in favor of Ms. Winner's release.

But even if the Court believes the nature and circumstances of the offense and the weight of the evidence counsel in favor of detention, the Court must also consider the Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3). Ms. Winner, as shown by the testimony presented during the initial detention hearing and the hearing on September 29, 2017, is not the proverbial monster the Government has painted. She is very close to her family; she is involved in her community in various ways; she cares about the environment; she has no criminal history;

she has limited financial means; she has no history of drug or alcohol abuse; and she cares about her country.

In addition, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Ms. Winner's release.  *Id.*  at § 3142(g)(4).  As explained in previous filings [*See* Rec. Doc. No. 96], during the hearing on September 29, 2017, and below, there are any number of conditions of release that would practically eliminate any such danger, and the Defendant (and her family) have agreed to comply with any condition or combination of conditions this Court sees fit to impose, as set forth below.

II. **The Court Should Release Ms. Winner Because There is a Combination of Conditions That Will Reasonably Assure the Safety of the Community and the Appearance of Ms. Winner in Court.**

At the conclusion of the second detention hearing, the Court articulated that the issue before the Court is whether there are any conditions that reasonably assure Ms. Winner will appear in court and that will reasonably assure the safety of the community.  *See* 18 U.S.C. § 3142(f).  Indeed, "[s]ection 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it.'"  *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996).

With respect to flight, there are conditions that will reasonably assure Ms. Winner's appearance at trial.  While the Government has speculated that the Defendant was eager to leave the country -- asserting, without any evidentiary support, that Ms. Winner would be sought out by an adversary of the United States and that Ms. Winner's own Internet activity and interest in the Middle East show a capability to live abroad -- it has come forward with no evidence to carry its burden.  The Defendant elicited testimony from the Government's sole witness that questions the strength of the Government's position regarding flight and Ms. Winner's ability to flee, and defense witnesses explained why Ms. Winner had an interest -- an innocuous interest that was

occupation-related -- in the Middle East.  Regardless, there are conditions, such as requiring Ms. Winner to surrender her passport, requiring that Ms. Winner not obtain a new passport during the pending of this action, ordering Ms. Winner to wear a monitoring bracelet, ordering that Ms. Winner not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer and the Government, and requiring that Ms. Winner check in regularly with her Pretrial Services Officer, that would reasonably assure she will appear for trial and not flee the country.

With respect to dangerousness, there are, likewise, conditions that will reasonably assure the safety of the community if Ms. Winner is released.  While the Government has voiced concern that there is "information" contained in Ms. Winner's head that she may disclose if released, such a concern is unfounded.  First, the Defendant is, of course, presumed innocent of having ever disclosed *any* classified information or national defense information improperly.  Second, Ms. Winner has no prior criminal record.  Third, to the extent the Court has any concerns of her doing so during the pendency of this matter, there are conditions that would reasonably assure she does not engage in such activity.  For example, the Court could order that Ms. Winner not possess or have access to any electronic device capable of accessing the Internet[1] and not access the Internet through any such device or any other means unless possession of such device or such access is approved by her Pretrial Services Officer, avoid communication with any media outlet, and have regular contact with her Pretrial Services Officer.

Further, with respect to both flight and dangerousness, Ms. Winner's mother ("Ms. Winner-Davis") has made arrangements to serve as a third-party custodian while Ms. Winner faces the charge in this matter.  These arrangements alleviate any concern that Ms. Winner will

---

[1] Significantly, Ms. Winner is willing to agree to restrictions on computer or Internet usage despite constitutional concerns regarding such conditions. *See, e.g.*, *United States v. Karper*, 847 F. Supp. 2d 350 (N.D.N.Y. 2011).

flee the country or improperly disclose any information. The Court heard testimony from Ms. Winner-Davis, who is confident in her belief that Ms. Winner will abide by every condition imposed upon her by the Court, but who is also ready and willing to report any violation of any condition of release to the Court [*See* Rec. Doc. No. 98 ¶¶ 5, 12]. Ms. Winner-Davis is also willing to post her property as bond for her daughter's release [*Id.* ¶ 6]. Moreover, it is evident from Ms. Winner-Davis's testimony during the initial detention hearing and the second detention hearing that the two have a very close and special relationship.

Finally, and importantly, as demonstrated in her declaration, Ms. Winner is willing to abide by any condition the Court places on her, including, but not limited to, all of those conditions noted above [*See* Rec. Doc. No. 97].

Thus, while the Defendant asserts the Government has not met its burden, there is no doubt, in any event, that a combination of conditions can be imposed to reasonably assure Ms. Winner's appearance in court and the safety of the community. *See Xulam*, 84 F.2d at 444 ("In view of the immense harm to their reputations that Sister Krommer and Ms. Porter would suffer if appellant were to flee and appellant's proffer that he would comply with any conditions of release imposed upon him, the government failed to prove by a preponderance of the evidence that 'no condition or combination of conditions' would 'reasonably assure' appellant's appearance in court." (citation omitted)).

**III.     Releasing Ms. Winner with Conditions is Consistent with Rulings in Prior Espionage Act Cases.**

As discussed at length at the September 29, 2017 hearing, the vast majority of courts that have addressed whether to release or detain a defendant accused of committing a similar offense as Ms. Winner have held that the defendant was entitled to be released pending trial [*See* Rec. Doc. No. 88 pp. 14–20].  The Government has asserted that the cases cited by the Defense are distinguishable from Ms. Winner's case because the defendants in those cases were charged with misdemeanor violations or retention of classified information (as opposed to disclosure of such information) [*See* Rec. Doc. 100 pp. 9–10].  These are distinctions without a difference.  To illustrate, while General Petraeus was charged with the misdemeanor violation of unauthorized removal and retention of classified information, the underlying factual conduct charged against him involved the disclosure of eight notebooks that contained "classified information regarding the identities of covert officers, war strategies, intelligence capabilities and mechanisms, diplomatic discussions, quotes and deliberative discussions from high-level National Security Council, and [General] Petraeus's discussions with the President."  *See United States v. Petraeus*, Case No. 3:15-cr-47-DCK (W.D.N.C. Mar. 3, 2015) (Rec. Doc. No. 3 p. 9 ¶ 17).  What's more, Petraeus was also caught on audio recordings revealing TOP SECRET information to newspaper reporters concerning "sensitive military campaign and operations."  *In the Matter of the Search of (Sealed)*, No. 1:13-SW-273 (E.D. Va. 2013), *available at* http://www.politico.com/f/?id=00000155-3054-d270-ab57-f254ada80000  (Application for Search Warrant ¶¶ 31–32).  The factual conduct in *Petraeus*, therefore, was substantially *worse* than this case, in which the Government alleges the disclosure of a single document, a single time, to a single domestic source.

The same holds true for the other cases that *did* involve felony prosecutions for the disclosure, and not retention, of classified information.  While the Government asserts that, in many of the other Espionage Act matters referenced by the Defendant, the issue of detention was not litigated [*See* Rec. Doc. No. 100 p. 9], those cases, like *Petraeus*, involved conduct far worse than that alleged here.  *See United States v. Kiriakou*, Case No. 1:12-cr-127 (E.D. Va.) (disclosure of CIA officer's identity to a reporter); *United States v. Sterling*, Case No. 1:10-cr-485 (E.D. Va.) (numerous disclosures of classified information to members of the media); *United States v. Drake*, No. 1:10-cr-181 (D. Md.) (numerous disclosures of classified information to a reporter); *United States v. Stephen Jin-Woo Kim*, Case No. 1:10-cr-225 (D.D.C.) (disclosure to reporter regarding North Korean nuclear bomb test); *United States v. Franklin*, Case No. 1:05-cr-225 (E.D. Va.); *United States v. Rosen*, Case No. 1:05-ccr-225 (E.D. Va.) (multiple disclosures of classified information to foreign officials and foreign nationals); *United States v. Weissman*, Case No. 1:05-cr-225 (E.D. Va.) (disclosure of classified information to multiple persons, including journalists).  Again, the allegations against Ms. Winner are not different *except that* she is accused of far less serious conduct: disclosing only a single document, a single time, to a single source.[2]

Lastly, the Government has failed to cite to a single case to carry its burden where a defendant was charged with a similar offense, who was released on pretrial bond, later "leaked" information or fled the country -- as it claims, without support, that Ms. Winner might do if released.

---

[2] To the extent the Government now argues that "retention" is less serious than "disclosure," it has not made such distinction in prior prosecutions.  *See* United States Department of Justice, *Government Contractor Facing Federal Indictment for Willful Retention of National Defense Information* (Feb. 8, 2017), *available at* https://www.justice.gov/opa/pr/government-contractor-facing-federal-indictment-willful-retention-national-defense (explaining that "[w]illfully retaining highly classified national defense information in a vulnerable setting is a violation of the security policy and the law, which weakens our national security and cannot be tolerated" (quotation marks omitted)).

7

**IV.     Conclusion**

Detention is appropriate "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 107 (9th Cir. 1985) (citations omitted). Moreover, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.*; *see also United States v. Kaplowitz*, No. 14-203230CR, 2014 WL 2155231, at *4 (S.D. Fla. May 22, 2014) (citing *Motamedi*). At the initial detention hearing, the Court stated that, "If we were dealing with the person that Ms. Winner's parents know and love, then there would be no question that she ought to be released" [Rec. Doc. 29 p. 106]. Given all of the information presented at the initial detention hearing, all the information presented in connection with the Motion, and all of the information presented to the Court during the September 29, 2017 hearing, there can now be no doubt that Ms. Winner is that person and should be released.

But even if there is still doubt, there are conditions the Court can impose upon Ms. Winner to reasonably assure her appearance in court and the safety of the community. For example, the Court may impose any combination of the following conditions: (1) reside in her home in Augusta under the custody of a third-party custodian; (2) not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer and the Government; (3) not possess or access any electronic device capable of accessing the Internet and not access the Internet through any such device or any other means; (4) avoid communication with any media outlet; (5) have regular contact with her Pretrial Services Officer; (6) wear a monitoring bracelet; or (7) have her parents post their property as a bond. Ms. Winner urges the Court to release her with any of these conditions, as well as any other condition the Court deems appropriate.

Respectfully submitted,

BY: */s/ Brett A. Switzer*
Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

9

Thomas H. Barnard (Az. Bar No. 27488)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT**
**REALITY LEIGH WINNER**

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

                */s/ Brett A. Switzer*
                Brett A. Switzer