# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

**UNITED STATES OF AMERICA**     \*

     \*

     \*

**v.**     \*     **NO. 1:17-CR-00034**

     \*

**REALITY LEIGH WINNER**     \*

     \*

     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S BRIEF REGARDING THE ELEMENTS OF THE OFFENSE UNDER 18 U.S.C. § 793(e) AS THEY RELATE TO THE GOVERNMENT'S *EX PARTE* WITHOLDING OF DISCOVERY UNDER CIPA § 4

Defendant Reality Leigh Winner submits this brief pursuant to this Court's Order of September 22, 2017 [Doc. 94]. This brief sets forth the Defendant's positions regarding some of the elements the offense under 18 U.S.C. § 793(e) that are relevant to the instant discovery issues under the Classified Information Procedures Act ("CIPA"). Although the Court authorized the Defendant to submit her entire CIPA § 4 brief *ex parte*, the Defendant is submitting the severable legal component of the brief on the public docket. The Defendant will be submitting *ex parte* to the Court, via the Security Officer, the second part of this brief on or before October 5, 2017, which will detail how, in light of these elements of the offense, the specific discovery items that the Defendant has requested are relevant and helpful to her defense.

## I.     INTRODUCTION

Contrary to the Government's suggestions, this is not a simple case. Far from it. Section 793(e) is a notoriously complicated statute that has numerous elements, and is most extremely fact-intensive. For example, under § 793(e), it does not suffice for the Government to show that the classified intelligence reporting alleged in the Superseding Indictment (the "alleged classified

intelligence reporting") was marked classified at the time, or even that it was properly and currently marked classified. Rather, the Government must prove beyond a reasonable doubt that the alleged classified intelligence reporting could actually threaten the national security of the United States if disclosed, and that the information in the alleged classified intelligence reporting was closely held, meaning not available in the public domain or otherwise disclosed by the Government to third parties. Thus, the Government must provide in discovery any material that is relevant and helpful to the Defendant in countering the Government's proof, if any, that the alleged classified intelligence reporting was potentially damaging and closely held. Another element is that the Government must prove not only that it was the Defendant who disclosed the alleged classified intelligence reporting , but also that she did so "willfully"; that is, with a bad purpose to disobey or disregard the law. The Government therefore must produce as part of discovery virtually anything that could be helpful or relevant in assessing the Defendant's state of mind, including relevant and helpful materials that she saw or read.

Any withholding of information that could conceivably impinge upon the Defendant's right to present a defense should be approached with extreme caution, especially where such determinations are made on an *ex parte* basis. The Government must produce, of course, any evidence that is exculpatory, and any evidence that discoverable under Rule 16 of the Federal Rules of Criminal Procedure and/or CIPA, including any evidence that could be relevant and helpful to the Defendant's argument that there is a failure of proof with respect to the elements set forth below.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

The leading authority on the Espionage Act explains that the provision under which the Defendant is charged, § 793(e), is "undoubtedly the most confusing and complex of all the

federal espionage statutes."  Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes &*

*Pub. of Def. Info.*, 73 Colum. L. Rev. 929, 998 (1973) (attached as Exhibit A).  The provision

was "the culmination of [a] sloppy process," and its "key terms were formulated with hopeless

imprecision."  *Id.* at 999.  The section provides:

> Whoever having unauthorized possession of, access to, or control over any
> document . . . relating to the national defense, . . . willfully communicates,
> delivers, transmits or causes to be communicated, delivered, or transmitted, or
> attempts to communicate, deliver, transmit or cause to be communicated,
> delivered, or transmitted the same to any person not entitled to receive it, or
> willfully retains the same and fails to deliver it to the officer or employee of the
> United States entitled to receive it [is guilty of the offense].

18 U.S.C. § 793(e).

This language is vague and broad on its face, and if interpreted literally, would sweep in

large swathes of conduct that Congress never intended to proscribe and which the Constitution

would not permit even if Congress did so intend.  Courts have thus developed several

interpretive requirements under the statute, some apparent on its face and others not, in an

attempt to cabin its reach.  The Defendant sets forth some of these elements below.  Specifically,

the elements that the Defendant addresses here are: (a) the definition of "National Defense

Information"; (b) Willfulness; (c) Other Specific *Mens Rea* Requirements; and (4) "Transmitted"

or "Retained."[1]

## A.    National Defense Information

Section 793(e) requires that the Government prove that the alleged classified intelligence

reporting "relat[es] to the national defense."  It is well settled that the Government must establish

---

[1] This submission also does not discuss constitutional defenses that the Defendant may raise, such as under the First
Amendment, that may require showings by the Government beyond the requirements of § 793(e).  This submission
is in no way intended to and does not waive any statutory or constitutional rights that the Defendant may have under
applicable law.  The Defendant reserves the right to file supplemental submissions regarding additional elements of
the offense if it becomes apparent that those elements are relevant to discovery.  The Defendant will also provide
such briefing at the Court's direction if the Court determines that classified materials submitted *ex parte* by the
Government do implicate elements of the offense beyond those briefed here.

two sub-elements to show that information constitutes "national defense information" for purposes of § 793.

First, the Government must demonstrate that the alleged classified intelligence reporting "could threaten the national security of the United States" if disclosed. *United States v. Rosen*, 445 F. Supp. 2d 602, 622 (E.D. Va. 2006); *accord United States v. Morison*, 844 F.2d 1057, 1071–72 (4th Cir. 1988). As Judge Wilkinson explained in his concurrence in *Morison*, this requirement limits the statute "to cases of serious consequence to our national security." *Morison*, 844 F.2d at 1084 (Wilkinson, J., concurring). For otherwise, the statute would present serious overbreadth and vagueness concerns, and could be used as tool for punishing "mere criticism" of the Government or "leaks that . . . threaten only to embarrass one or another high government official." *Id.*

Second, the Government must prove that the information contained in the alleged classified intelligence reporting was "closely held by the government." *Rosen*, 445 F. Supp. 2d at 622. Information is not closely held where the Government has released it, or has deemed it unnecessary to keep the information secret, regardless of whether the information actually is in the public domain. *United States v. Heine*, 151 F.2d 813, 816 (2d Cir. 1945) (Hand. J.). But even if the Government did not release the information, and even if it has deemed it necessary to keep the information secret and tried to the best of its ability to keep the information closely held, information still "typically cannot qualify" as closely held for purpose of the Espionage Act "if it is in the public domain." *Id.* at 620–21. Where information is readily accessible on the Internet, for example, the proverbial cat is thereby already out of the bag and the information is no longer "closely held" for purposes of the Espionage Act.

Whether the prosecution will be able to prove beyond a reasonable doubt that the alleged classified intelligence reporting meets these two requirements for "national defense information"—*i.e.*, whether the alleged classified intelligence reporting could actually threaten the national security of the United States if disclosed and was actually closely held by the Government—is a "question of fact to be determined by the jury." *Gorin v. United States*, 312 U.S. 19, 32 (1941). It is not to be determined by the Court; the salient question, therefore, is whether the information potentially subject to discovery would be relevant and helpful to the Defendant in convincing *the jury* that the alleged classified intelligence reporting was not closely held or that its disclosure could not threaten the national defense.

The fact that these are factual issues to be found by the jury means that under § 793(e) the Government's determination to classify the alleged classified intelligence reporting is no substitute for the jury's determination. *See Morison*, 844 F.2d at 1086 (Phillips, J., specially concurring) ("[N]otwithstanding information may have been classified, the government must still be required to prove that it was in fact potentially damaging" to national security); *United States v. Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 320 at 2 (D. Haw. Mar. 20, 2009) (defendant could argue that information was not national defense information under § 793 even though it was classified).

Indeed, despite the Government's simplistic protestations to the contrary, "Congress has consciously refrained from making it a crime merely to disclose classified information without authority." *United States v. Truong Dinh Hung*, 629 F.2d 908, 928 (4th Cir. 1980) (opinion of Winter, J.). Congress specifically rejected a request from the Wilson Administration in passing the original Espionage Act in 1917 to make it a crime to disclose information in violation of presidential regulations. *Id.* Congress similarly turned back efforts to prohibit the disclosure of

classified information in the 1950, 1960s, and 1970s.  *Id.*  And in 2000,when Congress did pass a bill that would have made it unlawful to disclose any classified information, President Clinton vetoed the legislation, stating that the bill was "overbroad and may unnecessarily chill legitimate activities that are at the heart of a democracy."  Message on Returning Without Approval to the House of Representatives the "Intelligence Authorization Act for Fiscal Year 2001," 36 Weekly Comp. Pres. Doc. 278 (Nov. 4, 2000).

Thus, the Government does not meet its burden under § 793(e) of proving that the information at issue constitutes national defense information by asserting the information is classified.  Indeed, a significant portion of information that is classified does *not* amount to national defense information.  The current classification system is plagued by problems of over-classification and inconsistencies across the Government.  The numbers are staggering.  According to J. William Leonard, the former director of the Information Security Oversight Office that oversees the Federal Government's classification processes, "anywhere from *50 percent to 90 percent* of classified alleged classified intelligence reporting s could safely be made public."  Elizabeth Goitein & J. William Leonard, *America's Unnecessary Secrets*, N.Y. Times, Nov. 7, 2011 (emphasis added).[2]  Former Director of National Intelligence James Clapper succinctly explained why these overclassification problems exist at his 2010 confirmation hearing: for many Government employees, classifying a document is "an administrative default or automaticity," "it's the easy thing to do."  *Id.*  Hr's of Sen. Select Comm. on Intelligence at 18 (July 20, 2010).[3]

---

[2] The House Committee on Oversight and Government Reform recently noted the same estimates.  *Examining the Costs of Overclassification on Transparency and Security* (Dec. 7, 2016), *available at* https://oversight.house.gov/hearing/examining-costs-overclassification-transparency-security/.

[3] Inspector General reviews at individual agencies have confirmed these overclassification problems.  For instance, in 2013, the Department of Defense Inspector General analyzed a sample of 220 classified documents and found that "70 percent of the . . . documents reviewed had classification discrepancies."  Inspector General, *DoD Evaluation of*

Given these statistics, the alleged classified intelligence reporting's status as classified is not remotely dispositive of whether it is national defense information. Rather, the trial in this matter will necessarily require fact-intensive inquiries into whether the alleged classified intelligence reporting could actually "threaten the national security of the United States" if disclosed, and whether the information contained in the alleged classified intelligence reporting was actually "closely held by the government." *Rosen*, 445 F. Supp. 2d at 622. The Government is therefore obligated to provide discovery that is relevant and helpful to the Defendant in connection with the issue of whether the information contained in the alleged classified intelligence reporting was potentially damaging to national security, and whether the information was already in the public domain or had been disclosed by the Government, or even if not disclosed, whether the Government had made an internal decision that there was no need to keep it closely held. Classified discovery will be critically important to the Defendant's case to the jury on these questions for the reasons explained in the supplement filed *ex parte* and under seal.

> **B.**     ***Mens Rea* Requirements**

>> **1.     Willfulness Requirement**

Section 793 requires the Government to prove that the Defendant acted "willfully." When a criminal statute imposes a willfulness requirement, "[t]he jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 193 (1998); *accord United States v. Dominguez*, 661 F.3d 1051, 1068 (11th Cir. 2011). The Eleventh Circuit Pattern Jury

---

*Over-Classification of Nat'l Sec. Info.* at 45 & app'x A, Office of the Inspector General United States Department of Defense (Sept. 30, 2013). A 2013 Department of Justice Inspector General similarly found "persistent misunderstanding and lack of knowledge of certain classification processes by officials within DOJ components." Inspector General, *Audit of the Department of Justice's Implementation and Compliance with Certain Classification Requirements* at ii, U.S. Department of Justice Office of the Inspector General Audit Division (Sept. 2013).

Instructions are in accord with this understanding, providing that "the term 'willfully' means that an the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law." 11th Cir. Pattern Jury Instr. B91:A (2016).

Courts have employed this same standard in cases under § 793. In *Morrison*, the Fourth Circuit approved a jury instruction that defined willfully for purposes of § 793 as acting "with a bad purpose either to disobey or to disregard the law." 844 F.2d at 1071. In *Truong Dinh Hung*, the Fourth Circuit similarly approved a jury instruction under § 793(e) that required a finding that the defendant "acted in bad faith," and the instruction defined bad faith as "prompted by some personal or underhanded motive." 629 F.2d at 919.

The Government therefore must prove that the Defendant knew "that [her] conduct was unlawful" and acted with a "bad purpose" or an "evil-meaning mind." *Bryan*, 524 U.S. at 193 (1998); 11th Cir. Pattern Jury Instr. B91:A (2016). Given these requirements, *any* discovery that bears on the Defendants' state of mind at the time of her alleged conduct is relevant and must be disclosed to her. Indeed, courts have found that where willfulness is an element of a criminal offense, "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind. No evidence which bears on this issue should be excluded unless it interjects tangential and confusing elements which clearly outweigh its relevance." *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989); *see also United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1992) (trial court erred in excluding evidence probative of the defendant's state of mind, and hence willfulness); *United States v. Harris*, 942 F.2d 1125, 1130 (7th Cir. 1991) (same). The Government therefore must disclose any and all materials that would be relevant or helpful in determining the Defendant's motive or intent, her state of mind

regarding the context of her actions, and her knowledge of the lawfulness of her actions, as all such information bears on whether the Defendant acted with "bad purpose" or an "evil-meaning mind." *Bryan*, 524 U.S. at 193.

## 2. Specific *Mens Rea* Requirements

In addition to the willfulness standard discussed above, § 793(e) imposes several specific *mens rea* requirements, as well. This Court likely need not address these specific requirements for purposes of the instant discovery issues, since the general willfulness requirement entitles the Defendant to any materials relevant to her state of mind. Nonetheless, the Defendant presents these specific *mens rea* requirements here in the event the Court finds them germane in determining what the Government must produce in the CIPA process.

### a. Knowledge That The Alleged Classified Intelligence Reporting Was National Defense Information

At least two federal district courts have recognized that § 793(e) requires the Government to "prove beyond a reasonable doubt that [the defendant] *knew* the information was NDI." *Rosen*, 445 F. Supp. 2d at 625 (emphasis added); *accord Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 782 p. 49 (July 28, 2010) (providing jury instruction that the Government must prove that "the defendant knew [the] documents [were] relating to the national defense"). Thus, the Government must prove that a defendant *knew* the "information was closely held by the United States," and *knew* "that disclosure of this information might potentially harm the United States." *Rosen*, 445 F. Supp. 2d at 625. This *mens rea* requirement applies to the disclosure of both tangible items or intangible information under the statute *Id.* at 640–41.[4]

---

[4] In its opposition to the Defendant's Motion to Reopen Detention Hearing Pursuant to 18 U.S.C. § 3142(f) and Impose Conditions of Release and Request for a Hearing, the Government points to § 793(e)'s "reason to believe" language, which some courts have held applies only to the disclosure of intangible information under the statute [Doc. 100 p. 13 n.5]. The Defendant has no quarrel with that proposition of law. But *Rosen* explained that this "reason to believe" requirement is separate from the *mens rea* requirement that a defendant knew the document or

While the Government now seems to take the position that § 793 does not impose this knowledge requirement [*See* Doc. 100 pp. 12–13], the Government took the *opposite* position in *Gowadia*. There, in the Government's own words, "The government agree[d] with the defendant that the defendant must . . . *know* that such information related to the national defense." *Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 508 p. 6 (Jan. 15, 2010) (emphasis added). The Government, in fact, included this language in its proposed jury instructions regarding the disclosure of tangible documents in that case. *Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 730 p. 53 (June 28, 2010). And, of course, allowing the Government to change its mind regarding the elements of a criminal statute, without notice, may implicate due process concerns, *see, e.g.*, *Buffo v. Graddick*, 742 F.2d 592, 596 (11th Cir. 1984), or judicial estoppel concerns, *see, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001), or may open the statute to a vagueness challenge, *see, e.g.*, *United States v. Sattar*, 272 F. Supp. 2d 348, 358 (S.D.N.Y. 2003) ("Such changes in the Government's interpretation of [the statute] demonstrate why the provision . . . is unconstitutionally vague: a criminal defendant simply could not be expected to know that the conduct alleged was prohibited by the statute.").

In any event, there are several reasons why courts and the Government itself have recognized the existence of this knowledge requirement under § 793(e). First, the requirement follows from the willfulness requirement that the Defendant must have "acted with knowledge that [her] conduct was unlawful." *Bryan*, 524 U.S. at 193. The Defendant could not act willfully

---

information was national defense information, which applies to tangible and intangible information alike. 445 F. Supp. 2d at 640–41. Thus, whether the information is tangible or intangible, the Government would have to prove that a defendant *knew* that the information was national defense information, *i.e.*, that the defendant knew that the information could potentially damage national security and was closely held. *Id.* at 626 (knowledge that the information is national defense information "concerns only the quality of the information," whereas the reason to believe requirement "relates to the intended (or recklessly disregarded) effect of the disclosure").

for purposes of § 793(e) unless she knew that the alleged classified intelligence reporting constituted national defense information. *Rosen*, 445 F. Supp. 2d at 625, 640–41.

Second, as *Rosen* held, this knowledge requirement is necessary for an additional reason: the First Amendment issues hanging over the statute. The Supreme Court has emphasized the need for heightened "*mens rea* requirements" for statutes that proscribe speech to provide "breathing room" for persons to speak without "fear that [they] may accidentally incur liability." *United States v. Alvarez*, 567 U.S. 709, 733 (2012) (Breyer, J. concurring in judgment); *see also United States v. Heineman*, 767 F.3d 970, 973–77 (10th Cir. 2014). And here, there is a particular need for "breathing room" because of the type of speech that § 793(e) regulates. The statute reaches a wide range of "speech on matters of public concern," which "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (internal quotation marks omitted). Indeed, § 793(e) regulates not just any speech on matters of public concern, but speech that frequently will be disclosed through the press on matters of national importance. *See* Edgar & Schmidt, *supra*, at 998. Because the elements of § 793 need be the same for all persons to whom the statute may apply—whether the Defendant, a White House official providing information on background to reporters, or even a member of the press—an exacting scienter requirement is necessary to avoid chilling speech that is essential to the public discourse and sits at the core of the First Amendment.

The *Rosen* court applied these principles in holding that § 793(e) requires a showing that the defendant knew the relevant documents or information constituted national defense information. The court held that any "alternative construction simply is not sustainable" under the First Amendment. *Rosen*, 445 F. Supp. 2d at 641. It would raise the specter of prosecution

for government and "non-governmental employees" alike for the "innocent" or "negligent" disclosure of information relating to the national defense while discussing matters of public concern. *Id.* at 640–41. "Punishing defendants engaged in public debate for unwittingly harming" the national security "is inconsistent with the Supreme Court's First Amendment jurisprudence." *Id.* at 640.

Consequently, the Defendant is entitled to any evidence or discovery that would be relevant and helpful in determining whether the Defendant understood that the information contained in the alleged classified intelligence reporting constituted national defense information, *i.e.*, whether she was aware that the information was potentially damaging to national security and whether she was aware that it was closely held.

### b.     Intent to Injure the United States

In addition to showing willfulness and that the Defendant knew the alleged classified intelligence reporting was national defense information, the Government must prove that the Defendant *intended* to injure the national security of the United States in allegedly disclosing the alleged classified intelligence reporting . Judge Winter in *Truong Dinh Hung*, as well as Edgar and Schmidt, recognized this intent requirement, which Congress made clear in amending the espionage laws in 1950. The House Report to one of the new espionage laws Congress passed in 1950 stated that the existing espionage statutes—including the predecessor to § 793(e)—criminalized disclosures only "'if it can be proved that the person making the revelation did so with an intent to injure the United States.'" *Truong Dinh Hung*, 629 F.2d at 927 n.21 (opinion of Winter, J.) (quoting H.R. Rep. No.1895, 81st Cong., 2d Sess. (1950)); *see also* Edgar & Schmidt, *supra*, at 1020 ("The House Report expressly stated that prior law made such revelations criminal only when done with intent to injure the United States.").

Section 793(e) must be interpreted to require a showing of intent to injure the United States in order to save the statute from First Amendment and overbreadth problems. Without an intent requirement, § 793(e)'s "plain language" would be "violated scores of times daily." *City of Houston v. Hill*, 482 U.S. 451, 466 (1987) (finding ordinance overbroad in violation of First Amendment). One need only pick up the day's NEW YORK TIMES or WASHINGTON POST to find articles with quotes from anonymous Government officials concerning sensitive national security matters. Under the Government's current interpretation of § 793, all of these Government sources potentially have violated the Espionage Act by disclosing documents or information "relating to the national defense" to a "person not entitled to receive it," *i.e.*, the reporter. 18 U.S.C. §§ 793(d) & (e). The Government cannot cure these overbreadth problems by arguing that it chooses not to prosecute most such violations as a matter of prosecutorial discretion; this Court must interpret the elements of the offense based on the speech that the statute actually proscribes and the First Amendment issues that the criminalization of such speech raises. *See Atlanta J. & Constitution v. City of Atlanta Dep't of Aviation*, 322 F.3d 1298, 1311 (11th Cir. 2003) (en banc) (The Government's "discretion" in regulating speech "must be restrained through procedures or instructions designed" to cabin that discretion.). Requiring a showing of intent to harm the national security is necessary to avoid criminalizing speech that occurs every day to benefit this nation and its public discourse. *See Gorin*, 312 U.S. at 21 (holding that different provision of Espionage Act was not unconstitutionally overbroad only because of its "scienter" requirement").

**C.    Willfully "Transmitted" or "Retained" the Alleged Classified Intelligence Reporting**

Section 793(e) also requires that the Government prove that the Defendant willfully communicated, delivered, or transmitted the alleged classified intelligence reporting to a person

not entitled to receive it, or willfully retained the alleged classified intelligence reporting  and failed to deliver it to the officer or employee of the United States entitled to receive.   The Government therefore must prove beyond a reasonable doubt that it was the Defendant who disclosed the alleged classified intelligence reporting and not some other person who had access to the alleged classified intelligence reporting  at the time.

## III.    CONCLUSION

For the reasons stated above, the Defendant respectfully requests that that Court deny any *ex parte* request to withhold classified materials from discovery that would be potentially helpful to the Defendant's case under the above elements of the offense.

Respectfully submitted,


BY:     */s/ Brett A. Switzer*
        Joe D. Whitley (Bar No. 756150)
        Admitted *Pro Hac Vice*
        Brett A. Switzer (Bar No. 554141)
        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, P.C.**
        3414 Peachtree Rd., NE Suite 1600
        Atlanta, GA  30326
        (404) 577-6000
        JWhitley@bakerdonelson.com
        BSwitzer@bakerdonelson.com

        John C. Bell, Jr. (Bar No. 048600)
        Titus T. Nichols (Bar No. 870662)
        **BELL & BRIGHAM**
        PO Box 1547
        Augusta, GA  30903-1547
        (706) 722-2014
        John@bellbrigham.com
        Titus@bellbrigham.com

        Matthew S. Chester (La. Bar No. 36411)
        Admitted *Pro Hac Vice*
        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, P.C.**
        201 St. Charles Ave., Suite 3600
        New Orleans, LA  70170
        (504) 566-5200
        MChester@bakerdonelson.com

        Jill E. McCook (Tn. Bar No. 033813)
        Admitted *Pro Hac Vice*
        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, P.C.**
        265 Brookview Centre Way, Suite 600
        Knoxville, TN  37919
        (865) 549-7129
        JMCook@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com


**ATTORNEYS FOR DEFENDANT**
**REALITY LEIGH WINNER**


## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

*/s/ Brett A. Switzer*
Brett A. Switzer